## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## AT ABINGDON

| | |
|---|---|
| JEFF HUTTON,<br><br>Plaintiff,<br>v.<br><br>INTEGRITY FINANCIAL PARTNERS, INC.,<br><br>Defendant. | **Civil Action File:**<br><br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

### JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

2. This action arises out of Defendant and their agents' repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") in their illegal efforts to collect a consumer debt from Plaintiffs and in communications with third parties concerning such debt.

3. Venue is proper in this District because the acts and transactions occurred here, Plaintiffs reside here, and Defendants transact business here.

### PARTIES

4.   Plaintiff Jeff Hutton is a natural person who resides in the Town of Marion, County of Smyth, State of Virginia, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and (5), and/or a person affected by a violation of the FDCPA with standing to bring this claim under 15 U.S.C. § 1692k(a). Creighton v. Emporia Credit Service, Inc. 981 F. Supp. 411 (E.D. Va. 1997).

5.   Defendant Integrity Financial Partners, Inc., (hereinafter "Defendant Integrity") is a collection agency operating from an address of 4370 W. 109th Street, Suite 100, Overland Park, KS 66211, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6). Maquire v. Citicorp Retail Services, Inc., 147 F.3d 232 (2nd Cir. 1998); Taylor v. Perrin, Landry, deLaunay U & Durand, 103 F.3d 1232 (5th Cir. 1997).

6.   Defendant Integrity may be served through its registered agent, Corporation Service Company, Bank of America Center, 16th Floor, Richmond, Virginia, 23219.

7.   There are several agents working for Defendant Integrity, the identities of which are unknown at this time.  These several agents placed numerous phone calls to Plaintiff in an attempt to collect a debt and, in making these calls, violated the FDCPA.  Defendant Integrity is responsible under the doctrine of *respondeat superior* for the acts and omissions, as further described below, of the agents under their employ.

8.   Defendant Integrity and its several agents will, at times, be referred to collectively as "Defendants."

### FACTUAL ALLEGATIONS

9.   Sometime prior to the collection activities of the Defendant began, Plaintiff incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a personal

credit card debt with GECRB/WALMART , which was used by Plaintiff for personal, family and household purchases. Mabe v. G.C. Services Limited Partnership, 32 F.3d 86 (4th Cir. 1994)

10.  Sometime thereafter, the debt was consigned, placed or otherwise transferred to Defendant for collection from Plaintiff.

11.  Each of the phone calls placed by Defendant and its agents, to Plaintiff, more fully described below, were a "communication" in an attempt to collect a debt, as that term is defined by 15 U.S.C. § 1692a(2). Pittman v. J.J. MacIntrye Co, 969 F. Supp. 609 (D.Nev 1997); Horkey v. JVDB & Associates, Inc., 333 F.3d 769 (7th Cir. 2003); Adams v. Law Offices of Stuckert & Yates, 926 F. Supp. 521 (E.D. Pa 1996).

12.  The sheer volume an persistence of the calls placed by Defendants between September 2012 and January 2013, more fully described below, was conduct, engaged in by Defendant and its agents, the natural consequences of which is to harass, oppress or abuse Plaintiff in connection with collection of the alleged debt, in violation of 15 U.S.C. § 1692d.

13.  Further, each call placed after Plaintiff informed Defendant's agent that he disputed the debt and asked not to be called was a violation of 15 U.S.C. § 1692d(5) for "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

14.  In addition, Defendants persistence in calling Plaintiff constituted an "unfair or unconscionable means to collect or attempt to collect a debt" in violation of 15 U.S.C. § 1692f.

15.   Also, several of the telephone calls placed by Defendants, throughout the relevant time period, were placed by Defendants "without meaningful disclosure of the caller's identity" because they were placed in a manner that concealed the phone number called from.  These calls were placed in violation of 15 U.S.C. § 1692d(6).

16.   During all relevant times, Plaintiff was unable to work due to numerous medical conditions and was seeking social security/disability benefits.  Plaintiff was at home for all of the calls placed by Defendants.

17.   All times of day referred to in this Complaint are Eastern Standard Time.

18.   At some point around August 2011, Plaintiff became disabled and unable to work. Between August 2011, and around July 2012, Plaintiff was making regular payments on his account with the original creditor, Walmart, in the amount of fifty dollars ($50) a month from his personal savings account.

19.   On or around July of 2012, after his personal savings account was depleted, Plaintiff asked Walmart if he could pay ten dollars ($10) a month because he was disabled and was seeking disability benefits.

20.   Walmart declined Plaintiff's offer.  Soon after, Defendants attempts to collect this debt began.

21.   Upon receipt of a letter from Defendant Integrity, dated August 27, 2012, Plaintiff contacted Defendant Integrity and offered to pay them ten dollars ($10) a month. Defendant told him they could not accept that payment and demanded a payment of at least fifty dollars ($50) a month.

22.   Plaintiff informed the agent of Defendant Integrity that he could not afford that payment and he could provide proof of his disability claim that he had filed.  The agent did not respond.

### NUMEROUS COLLECTION CALLS

23.   Beginning in the month of September, 2012 and ending sometime in the month of January, 2013, Defendant and its agents called Plaintiff nearly every day, including Saturday and Sunday, and Christmas Eve, between two (2) and six (6), or more, times a day.

### *Collection calls from September and October 2012*

24.   On several occasions in September and October of 2012, Defendants contacted Plaintiff by telephone at his residence in an effort to collect this debt.  All such calls were a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

25.   Defendant and its agents called Plaintiff nearly every day in September, October and November of 2012 in an attempt to collect a debt from Plaintiff.

26.   On one of the early September calls, Plaintiff answered, disputed the amount of the debt Defendant was trying to collect, and asked not to be called again.

27.   Currently, Plaintiff does not have evidence of the calls placed in September, October and November, other than the testimony of Plaintiff.  However, after opportunity for discovery, Plaintiff believes there will be further concrete evidence to support the allegations.  Further, Plaintiff does have documented evidence of the numerous phone calls made by Defendants in December and January, described more fully below.  This

evidence supports the allegations of the numerous phone calls placed in September, October and November.

28.     An unknown number of these calls were placed under circumstances where Defendant or its agents concealed the caller identification information as Plaintiff's caller identification system showed "OUT OF AREA" for both the name and the telephone number.  This occurred in approximately five (5) percent of the calls placed by Defendants.  All calls placed by Defendant and its agents did not disclose the identity of the caller except for by telephone number, and showed "OUT OF AREA" for the name.

### *Collection calls from December 2012*

29.     Throughout the month of December, Defendants called Plaintiff in an attempt to collect a debt nearly every day, and on average, approximately five (5) times a day.  Each and every phone call described below was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

30.     On or about December 28, 2012, Plaintiff spoke to an agent of Defendant and disputed the amount of the debt and asked not to be called again.  The calls stopped around the end of the year for a short period of time, presumable because of the holiday season, and not because Plaintiff asked them to, as the calls did resume in January.

31.     For example, on December 18, 2012, Defendants called Plaintiff at 10:43 a.m., 11:58 a.m., 12:47 p.m., 1:23 p.m., 2:49 p.m., and 3:58 p.m.  On December 19, 2012, Defendants called Plaintiff at 9:23 a.m., 10:41 a.m., 11:26 a.m., 12:10 p.m., 1:41 p.m., and 3:02 p.m.  On December 20, 2012, Defendants called Plaintiff at 11:05 a.m., 1:45 p.m., 3:13 p.m., 5:07 p.m., and 6:21 p.m.  On December 21, 2012, Defendants called Plaintiff at 8:20 a.m., 9:24 a.m., 11:12 a.m., and 2:42 p.m.  On December 22, 2012, Defendants called Plaintiff at

8:16a.m., 9:17 a.m., 11:29 a.m., and 2:05 p.m.  Defendants even called Plaintiff on Christmas Eve, December 24, 2012 at 8:45 a.m., and 12:40 p.m.  Defendants did not call Plaintiff Christmas Day; however, the calls resumed December 26, 2012.

32.    The above recitation of numerous phone calls, placed daily by Defendants, is a typical sample of the repetitive harassing phone calls that have occurred since September of 2012.

### *Collection Calls From January 2012*

33. The telephone calls from Defendants to Plaintiff resumed January 4, 2013.  Each and every phone call described below was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

34.    Defendants placed at least four (4) calls on January 4, 2013, at least three (3) calls on January 5, 2013, at least two (2) calls on January 6, 2013, at least five (5) calls on January 7, 2013, at least six (6) calls on January 8, 2012, and at least four (4) calls on January 9, 2013.

35.    Defendants continued to place calls at comparable volume until January 22, 2013.  After nearly five (5) months of over thirty (30) phone calls per week, an estimated total well over five-hundred (500) total calls, Defendant Integrity has apparently moved on.

### VIOLATIONS OF THE FDCPA

36.    Due to the sheer volume and persistency of the calls placed by Defendants to Plaintiff, Defendant Integrity and its agents have engaged in conduct, the natural consequences of which is to harass, oppress or abuse Plaintiff in violation of 15 U.S.C. § 1692d.

37.    By continuously calling Plaintiff after Plaintiff disputed the debt and asked not to be called, Defendant Integrity and its agents have repeatedly violated 15 U.S.C. § 1692d(5) by "[c]ausing a telephone to ring or engaging any person in telephone conversation

repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

38.    Because of the continuing and persistent nature of Defendant's collection activities, Defendant has used an "unfair or unconscionable means to collect or attempt to collect a debt" in violation of 15 U.S.C. § 1692f.

39.    The telephone calls placed by Defendant Integrity where the identifying caller identification information was concealed, did not meaningfully disclose the identity of the caller in violation of 15 U.S.C. § 1692d(6).

## ACTUAL DAMAGES

40.    Defendant and its agent's illegal abusive collection communications as more fully described above were the direct and proximate cause of severe emotional distress on the part of Plaintiff and has contributed to and exacerbated serious medical conditions suffered by Plaintiff.  The aggravation of Plaintiff's medical conditions caused an increase in Plaintiff's physical pain level and resulted in depression and anxiety.

41.    Plaintiff has suffered actual damages as a result of these illegal collection communications by these Defendants in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions.  Plaintiff has suffered severe emotional distress because of the actions of the Defendants.

42.    The above-detailed conduct by the Defendant and its agents harassing and abusing Plaintiff in an effort to collect this debt was a violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the above mentioned provisions of the FDCPA.

<u>**RESPONDEAT SUPERIOR LIABILITY**</u>

43.    The acts and omissions of any of the debt collectors employed as agents by Defendant

Integrity, who communicated with Plaintiffs as further described herein, were committed

within the time and space limits of their agency relationship with their principal, Defendant

Integrity.

44.    The acts and omissions by any of the debt collectors employed by Defendant Integrity were

incidental to, or of the same general nature as, the responsibilities these agents were

authorized to perform by Defendant Integrity in collecting consumer debts.

45.    By committing these acts and omissions against Plaintiff, these other debt collectors

employed by Defendant Integrity were motivated to benefit their principal, Defendant

Integrity.

46.    Defendant Integrity is therefore liable to Plaintiff through the Doctrine of Respondeat

Superior for the intentional and negligent acts, errors, and omissions done in violation of

state and federal law by its collection employees, including but not limited to violations

of the FDCPA, in their attempts to collect this debt from Plaintiff.

## **TRIAL BY JURY**

47.    Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so

triable.  US Const. amend. 7.  Fed.R.Civ.P. 38.

## **CAUSES OF ACTION**

### **COUNT I.**

### **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
### **15 U.S.C. § 1692 et seq.**

48.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as

though fully stated herein.

49.     The foregoing acts and omissions of Defendant Integrity and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to Plaintiff.

50.     As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that judgment be entered against each and every Defendant:

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendant and for Plaintiff; and

- for such other and further relief as may be just and proper.

Respectfully submitted,

**SNODGRASS LAW FIRM, PLC**

By: /s/**Brandon Snodgrass**
Brandon Snodgrass, Esq.
Attorney I.D.#47894

By: /s/**Matthew Felty**
Matthew Felty, Esq.
Attorney I.D. #74873

380 Porterfield Highway
P.O. Box 1417
Abingdon, VA 24212
Telephone: 276-676-2660
Facsimile: 276-676-2667
bsnodgrass@snodgrasslawfirm.com

**Attorneys for Plaintiff**